```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
METROPOLITAN OPERA ASSOCIATION,      :
                                     :
            Plaintiff,               :    00 Civ. 3613 (LAP)
                                     :
v.                                   :
                                     :         OPINION
LOCAL 100, et al.                    :        AND ORDER
                                     :
            Defendants.              :
------------------------------------x
```

LORETTA A. PRESKA, United States District Judge:

    Defendants Local 100, Hotel Employees and Restaurant Employees International Union ("Local 100"), Henry Tamarin and Dennis Diaz (collectively "Defendants") presently move to dismiss the damage claims of Plaintiff Metropolitan Opera Association ("Plaintiff"). For the reasons set forth below, Defendants' motion is denied.

I.    Background

    The history of this case is set forth in detail in an Opinion dated January 28, 2003. I restate only those facts that are pertinent to this motion. Plaintiff originally commenced this action against Defendants in New York State Supreme Court on May 1, 2000, claiming that Defendants improperly involved Plaintiff in a labor dispute between Local 100 and Restaurant Associates Corporation ("RA"), Plaintiff's food service provider. On May 12, 2000, Local 100 removed the case to this Court. Thereafter, by Order dated October 24, 2001, I directed that liability issues be tried prior to damage issues and that

discovery with respect to liability conclude by December 31, 2001.  Trial was eventually scheduled for April 15, 2002.

On the eve of trial, April 10, 2002, I granted Plaintiff's request for permission to file a motion for sanctions.  On April 11, 2002, Plaintiff filed a motion for judgment on liability and attorney's fees against Defendants, pursuant to Fed. R. Civ. P. 26 and 37, 28 U.S.C. § 1927 and the Court's inherent power.  Reviewing the motion and finding it not to be frivolous, I stayed all other proceedings, including trial, to allow the parties to brief the issues.  Plaintiff's motion for judgment as to liability and sanctions in the form of attorney's fees against Defendants was granted.  Metropolitan Opera Association v. Local 100, 212 F.R.D. 178 (S.D.N.Y. 2003)(the "Default Judgment").  In an Opinion dated August 27, 2004 (the "Reconsideration Opinion"), Defendants' subsequent motion for reconsideration of the Default Judgment was denied.  Metropolitan Opera Association v. Local 100, 2004 U.S. Dist LEXIS 17093 (S.D.N.Y. Aug. 27, 2004).

On February 10, 2003, counsel was present at a status conference to determine how to proceed with the damages and sanctions phase of the case.  During the conference, Defendants' counsel suggested that Plaintiff should respond to outstanding interrogatories and document requests relating to damages.  Plaintiff's counsel responded that "[t]he requests were, as you may recall, for all of the contribution records and all of the

ticket sales and so forth, and it is not our intention to rely on that kind of data to prove damages." (Transcript, Feb. 10, 2003 at 18.)

Defendants have made this representation by Plaintiff the subject of their instant motion to dismiss Plaintiff's damage claims. Specifically, Defendants argue that: (1) Plaintiff cannot recover damages without showing financial harm; and (2) Plaintiff's alleged "mitigation damages" do not constitute actual injury and are not compensable as a matter of law.

II. <u>Discussion</u>

    A. <u>Recovery Without Showing Financial Harm</u>

Defendants contend that the Court must examine Plaintiff's damage claims in accordance with the special standard required of defamation claims made in the context of a labor dispute. Specifically, Defendants argue that in order to recover damages, Plaintiff must make a showing of actual harm, which, according to <u>United States v. Linn</u>, "may include general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state law." 383 U.S. 53, 65 (1966).

Despite <u>Linn</u>'s broad definition of actual harm, Defendants argue that as a corporation, Plaintiff may show reputational harm only through financial loss. <u>Wolf Street Supermarkets, Inc. v. McPartland</u>, 487 N.Y.S.2d 442, 449 (4th Dept. 1985)(holding that,

unlike a natural person, a corporation does not have feelings and cannot suffer emotional harm). According to Defendants, a failure to show financial loss is an admission that a corporation has not suffered reputational loss.

There are a number of flaws in this approach. Specifically: (1) Defendants ignore the effect of the Court's prior rulings; (2) <u>Linn</u> does not apply on the present facts because Plaintiff has alleged constitutional malice and because this case does not involve a labor dispute; and (3) even assuming <u>Linn</u> applies, Defendants misunderstand and misapply the "actual harm" standard contained in <u>Linn</u>.

1. <u>Prior Rulings in this Case</u>

The Default Judgment granted "[p]laintiff's motion for judgment as to liability against defendants." <u>Met. Opera</u>, 212 F.R.D. at 231. Upon entry of a default judgment, the well-pleaded allegations of a complaint are to be accepted as true, except those relating to the amount of damages. <u>See</u>, <u>e.g.</u>, <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 108 (2d Cir. 1997); <u>Bambu Sales, Inc. v. Ozak Trading, Inc.</u>, 58 F.3d 849, 854 (2d Cir. 1995). As I noted in the Reconsideration Opinion, "a default effectively constitutes an admission that . . . the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." <u>Met. Opera</u>, 2004 U.S. Dist. LEXIS at *51 (quoting <u>In</u>

re Crazy Eddie Sec. Litig., 948 F.Supp. 1154, 1160 (E.D.N.Y. 1996). Plaintiff's Amended Complaint alleges that Defendants' acts have damaged Plaintiff by, among other things, causing Plaintiff to initiate and pursue this action and causing Plaintiff reputational harm, and these allegations are deemed admitted as a consequence of the Default Judgment. (Complaint, ¶¶ 44, 97, 113, 118, 123-26, 131-32, 137, 141.)

Defendants nevertheless maintain that to read the Default Judgment as an admission of the fact of damages reduces this proceeding to an inquest. Defendants note that neither the Transatlantic nor Bambu cases bifurcated liability and damages, as has been done here, and argue that where liability and damages are bifurcated, a plaintiff must establish a causal link between the alleged wrong and the damages sought in the damages phase, even if liability has already been established. Zhejiang Tongxiang Import & Export Corp. v. Asian Bank, N.A., 352 F. Supp. 2d 469, 470 (S.D.N.Y. 2005); see also Trehan v. Von Tarkanyi, 63 B.R. 1001, 1009 n.12 (S.D.N.Y. 1986)(Pollack, J.)(following default judgment establishing liability, "plaintiff is required to introduce evidence to prove the extent of damages and, based on this evidence, the court must determine whether the relief requested flows from the facts."); Meehan v. Snow, 494 F. Supp. 690 (S.D.N.Y. 1980)(applying the "flows from the facts" principle

in a defamation action).[1]

While Defendants' review of the case law is accurate, it is of no particular import to the present question. There is no doubt that Plaintiff must establish a causal link between Defendants' alleged wrongs and the damages sought, and Plaintiff

---

[1] Though the proposition that a plaintiff must establish a causal link between the alleged wrong and the damages sought in a bifurcated trial is sound case law, it does not appear to be a concept addressed in the Zhejiang case that Defendants cite. Rather, Zhejiang involved a shipment under a bill of lading. Summary judgment was granted on the issue of liability in favor of the plaintiff in 2001. It was not until 2003, however, that the question of plaintiff's contributory negligence was settled; therefore, as a damage figure had not been reached, the question of prejudgment interest had arisen. Zhejiang, 352 F. Supp. 2d at 469-71.

In resolving the issue, the Zhejiang Court specifically explained that its case was different from one in which liability and damages are bifurcated, id. at 472, despite Defendants' unambiguous representation that the case was an "action bifurcated into liability and damages phases, with causation and damages considered together." (Def's. Reply, 1.) In fact, Zhejiang more accurately stands for a proposition that supports Plaintiff's position:

> In making that determination [whether the summary judgment opinion is deemed a verdict, report or decision under N.Y. C.P.L.R. 5002], the Court must look to see if that opinion [deciding liability in favor of a plaintiff] represented the point at which plaintiff's right to be compensated for the damages [it] sustained became [] fixed in law. In bifurcated trials this occurs when the verdict holding the defendant liable is rendered, since at that point the defendant's obligation to pay the plaintiff is established, and the only remaining question is the precise amount that is due.

Id. at 472.

does not argue otherwise. However, the causal link is simply that the damages sought are of the type that flows from the wrongdoing. See, e.g., Flaks v. Koegel, 504 F.2d 702 (2d Cir. 1974). Consequently, to the extent that Defendants currently argue that Plaintiff can prove no damages attributable to Defendants' acts, that argument is foreclosed by the Default Judgment. The fact of damages is no longer in dispute; it is the amount of damages that is left to be determined.

    2.  The Damage Law Applicable to Plaintiff's Claims

Notwithstanding Defendants' failure to account adequately for the effect of the Default Judgment, they still mistakenly rely on United States v. Linn for the proposition that to recover damages, Plaintiff must show particular financial loss. Linn states that, where certain language in a labor dispute is per se actionable, the "amount of damages which may be recovered depends upon evidence as to the severity of harm." Linn, 383 U.S. at 65. As previously noted, "proof of such [actual] harm may include general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state tort law." Id. However, there are two reasons why this action does not fall under the Linn standard for actual harm: (1) Plaintiff has alleged constitutional malice; and (2) as I previously described both in the granting Plaintiff injunctive relief and in the

7

Reconsideration Opinion, this case cannot be considered a labor dispute.

Initially, according to Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974), to recover "presumed or punitive damages," a defamation plaintiff need only show "actual injury" when he cannot show constitutional malice, i.e., knowledge of falsity or reckless disregard for the truth. Here, Plaintiff has, in fact, alleged constitutional malice in its Complaint, and, as a result of the Default Judgment, such allegations are deemed true. (Complaint, ¶¶ 32, 67, 96, 99, 112, 114, 117, 127, 133, 138.) Defendants' argument that Plaintiff must show actual harm pursuant to Linn is therefore incorrect.

Additionally, Linn limits its requirement that a defamation plaintiff show actual harm to labor disputes. Linn, 383 U.S. at 65. I have already spoken in detail on the issue of whether this case may be considered a labor dispute:

> [E]ven under the hypertechnical definition of federal labor law, there was no "labor dispute" here. The dispute between the Union and RA -- regarding the means by which Local 100 would seek to recognize the RA workers at the Met, election or card check -- "did not concern the terms or conditions of employment or . . . the association of or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." Norris-LaGuardia Act, 29 U.S.C. § 113(c).

Met. Opera, 2004 U.S. Dist. LEXIS at *70. In response, Defendants represent that the Court of Appeals, in Metropolitan

8

Opera Ass'n. v. Local 100, 239 F.3d 172, 178-79 (2d Cir. 2001), "ruled" that this case involves a labor conflict. (Def's. Reply, 6.) This is an overstatement. In hearing an appeal of the granting of Plaintiff's motion for injunctive relief, though the Court of Appeals mentioned Linn, it only did so in consideration of Defendants' First Amendment rights. 239 F.3d at 178-79. As my original opinion granted Plaintiff's motion in the alternative, Met. Opera, 2000 WL 872829, the question of whether or not Plaintiff and Defendants were actually involved in a labor dispute was not squarely presented or addressed on appeal. This differs markedly from the original opinion granting injunctive relief and the Reconsideration Opinion, where I specifically considered whether the present case could be considered a labor dispute under the Norris-LaGuardia Act. As previously stated, I found no such conflict between Plaintiff and Defendants -- the labor dispute existed between Defendants and RA. Therefore, the actual harm requirement outlined in Linn is not applicable to this case.[2]

---

[2] It is also worth noting, however, that despite the fact that the actual harm standard outlined in Linn is not applicable to this case, Plaintiff maintains that it can show actual harm. Plaintiff proposes to show damages to reputation, trade, business dealings, image, good name and fame, and the like. These damage items certainly fall under the definition of actual harm offered in Linn or the more detailed definition of actual harm offered in Gertz, as explained below.

9

3. <u>The Definition and Applicability of "Actual Harm"</u>

Defendants maintain that Plaintiff is subject to the actual harm requirement contained in <u>Linn</u> and that as a corporation, Plaintiff's failure to show financial harm means that it cannot recover damages. Even assuming that <u>Linn</u> actually applies to Plaintiff's damage claims, Defendants' argument nevertheless mischaracterizes and misapplies the actual harm standard. Initially, Defendants have offered a definition of actual harm that is too narrow. Secondly, Defendants misstate the law with respect to Plaintiff's status as a corporation; there is, in fact, no special damage rule covering a corporation's defamation claims.

<u>Gertz</u> clarifies the definition of actual harm offered in <u>Linn</u>:

> Suffice to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by the defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

<u>Gertz</u>, 418 U.S. at 349-50. The proposition that a plaintiff need not "assign an actual dollar value to the injury" is completely at odds with Defendants' assertion that Plaintiff must show

10

particular evidence of pecuniary loss.  Id.[3]  This is further supported by a series of cases both inside and outside of the Second Circuit.  See, e.g., Dalbec v. Gentleman's Companion, Inc., 828 F.2d 921, 925 (2d Cir. 1987)(plaintiff met her burden by, among other things, submitting evidence that defamatory statements had negatively changed the opinion of community

---

[3] To reach this assertion, Defendants cite a group of cases (from which Gertz is notably absent) that are either inapplicable or discuss a defamation damage standard other than actual harm. Defendants cite Intercity Maint. Co. v. Local 254, 241 F.3d 82 (1st Cir. 2001) for the proposition that Linn requires a defamation plaintiff to supply evidence, such as lost contracts, to show actual harm.  Yet whereas Intercity (and Linn) involved a labor dispute -- a conflict over the collective bargaining agreement between an employer and the union -- as stated above, this case does not.  Further, the Intercity Court dismissed the plaintiff's claims because the plaintiff had "failed to introduce more than a scintilla of evidence of reputational harm or other specific damages," not, as Defendants suggest, for a singular failure to provide evidence of a specific kind of damages. Intercity, 241 F.3d at 86.  Thus, Intercity does not support Defendants' intimation that Plaintiff here must show a specific kind of damages.
    Gateway Theatrical of Bellport, Inc. v. Assoc. Musicians of Greater N.Y., 658 N.Y.S.2d 692 (2d Dept. 1997), only involved a discovery motion where plaintiffs, who claimed damage to their business in addition to reputation, were directed to disclose financial records.  No mention is made, as Defendants represent, that the ordered financial disclosure was material to "determine plaintiff's alleged actual damages." (Def's. Br., 10).
    Eden Park Health Svc. v. Ottley, 451 N.Y.S.2d 250 (3d Dept. 1982) is similarly inapplicable.  While Defendants offer the case for the proposition that a defamation plaintiff in a labor dispute must allege actual injury, here, Plaintiff and Defendants are not involved in labor dispute and, in any event, Plaintiff has, in fact, alleged actual injury in its Complaint. (Complaint, ¶¶ 44, 97, 113, 118, 123-26, 131-32, 137, 141.) Sager v. Local 1099, 655 N.Y.S.2d 953 (1st Dept. 1997) and Newsday, Inc. v. C.I. Peck Contractor, Inc., 451 N.Y.S.2d 415 (1st Dept. 1982), are irrelevant for the very same reason.

residents about her); Brown v. Petrolite Corp., 965 F.2d 38, 45-46 (5th Cir. 1992)(burden met through testimony as to the cost of advertising that would be required to combat the defamation); Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc., 61 F.3d 1250 (7th Cir. 1995)(award of actual damages where witnesses testified that they were almost fooled by the defamatory statements); Rombom v. Weberman, 2002 WL 1461890 (Sup. Ct. Kings Co. June 13, 2002), aff'd, 766 N.Y.S.2d 88 (2d Dept. 2003)(burden met where plaintiff's testimony was that defamatory statements were specifically designed to discourage potential clients from hiring him).[4]  The applicable case law quite simply does not require that a defamation plaintiff produce particular evidence of pecuniary loss to establish actual harm and recover damages.

Defendants argue, however, that this principle does not apply to a corporate plaintiff.  Though Defendants suggest that "reputational harm to a corporation can only manifest itself in financial loss," they do so without legal citation.  (Def's. Br., 8.)  In fact, there is no special rule applicable to corporations for quantifying reputational injury.

Initially, Defendants' contention that a corporation may

---

[4] Defendants object to this line of cases on the grounds that none involves a corporate plaintiff or features a labor dispute.  As was shown earlier however, this case does not involve a labor dispute, and, as will be shown shortly, there is no special damage rule for a corporate plaintiff.

12

only show reputational harm through specific pecuniary loss defies courts' basic understanding of defamation damages. I have already noted in this case that there is an "inability to measure accurately damage to reputation or goodwill" as well as an "inability to determine with precision which [of Plaintiff's] donors determined not to make contributions as a result of the Union's activities." Met. Opera, 2000 WL 872829 at *5. Judge Easterbook also noted the difficulty of such proof in Israel Travel Advisory Service, Inc.:

> [H]ow does [plaintiff] prove a counterfactual proposition about the behavior of persons who bought [its competitor's] services? [Plaintiff] was able to prove that lies had been told, but the extent of their effect was bound to be problematic. That is why general damages are available in the law of defamation.

61 F.3d at 1255. This principle does not somehow become irrelevant for a corporate plaintiff; reputational damages are no easier to quantify for a corporate plaintiff than for an individual plaintiff.

Defendants cite Wolf St. Supermarkets, Inc. v. McPartland, 487 N.Y.S.2d 442, 449 (4th Dept. 1985), a labor dispute applying Linn's actual harm requirement, for the proposition that a corporation does not have feelings and cannot suffer emotional harm -- yet the Wolf court itself held that the plaintiff-employer "could have shown from direct testimony from persons in the community that the statements were understood by them to

impeach the plaintiff's integrity or business methods causing them to shop elsewhere." Id. Thus, Wolf falls into the standard line of cases allowing a corporate plaintiff to show actual harm to reputation and recover damages based on types of loss other than specific instances of pecuniary business loss. See Harwood v. Pharmacal Co. v. Nat'l Broadcastign Co., 9 N.Y.2d 460, 464 (1961)(holding that plaintiff corporation did not have to offer proof of specific lost sales or relationships); Den Norske Ameriekalinje Actiesselskabet v. Sun Printing and Pub'g. Ass'n., 226 N.Y. 1, 10-11 (N.Y. 1919)(holding that an averment of specific damage is not necessary for a corporation in per se libel cases). The categories of evidence that a defamation plaintiff may use to show actual harm are described in Gertz above, and Defendants offer no case to contradict the established rule that a corporate plaintiff may show reputational harm using any or all of those categories of evidence.

B. Recovery of Mitigation Damages

Defendants also argue that Plaintiff may not recover attorney's fees as mitigation damages in connection with this case.[5] Defendants state that mitigation damages are only

---

[5] As a threshold matter, it is worth noting the incompatibility of Defendants' two arguments on this motion. Defendants first insist that Plaintiff can only show actual harm by offering specific items of pecuniary loss and that Plaintiff cannot and will not show such items. It seems inconsistent for Defendants then to decry Plaintiff's effort to include one of
(continued...)

14

available for efforts undertaken to mitigate the effects of the alleged defamation and that to recover attorney's fees under such a theory would violate the American Rule, providing that each party bears its own litigation expenses unless an award is authorized by agreement between the parties, statute or court rule. <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 247 (1975).

It is Defendants' position on this issue, not Plaintiff's, that is novel. The general rule regarding attorney's fees is that a plaintiff in a defamation action has the right, "at the risk of the wrongdoer," to "attempt by a reasonable and proper effort to prevent damage liable to result from the wrongful act which has been committed against him" and to recover from the defendant the costs thereby incurred. <u>Den Norske</u>, 226 N.Y. at 9. Plaintiff instituted this action "to protect the Met's name, its patrons, its donors, its contributors' names and reputations against -- to stop what the Met believes is defamation of the Met as well as those of other people, trespass and harassment." (Declaration of Deborah Lans, dated March 4, 2005, ¶ 11.)

Courts have consistently found attorney's fees generated in the course of action that Plaintiff describes above recoverable as mitigation damages. See <u>Houston v. The New York Post</u>, 1996

---

(continued...)
those specific items of pecuniary loss, attorney's fees generated in combating the alleged defamation, as unrecoverable.

U.S. Dist. LEXIS 19705 (S.D.N.Y. 1997)(legal fees recoverable by plaintiff in a defamation action incurred as part of her mitigation damages, notwithstanding the general rule against recovery of fees); DePinto v. Rosenthal & Curry, 655 N.Y.S.2d 102, 103 (2d Dept. 1997)("litigation expenses incurred in an attempt to avoid, minimize or reduce the damage" caused by defendant's wrongful conduct recoverable); Hogan v. Herald Co., 446 N.Y.S.2d 836 (4th Dept. 1982), aff'd, 58 N.Y.2d 630 (1982)(legal fees properly pleaded within claim for actual injuries); Jones v. Maher, 116 N.Y.S. 180 (N.Y. Sup. Ct. 1909), aff'd, 141 A.D. 919 (2d Dept. 1910)(damages included plaintiff's legal fees and other costs as a consequence of unlawful conduct of defendants, a union and its officers).

The cases that Defendants cite in opposition are either irrelevant or misrepresented. In Orlowski v. Koroleski, 651 N.Y.S.2d 137 (2d Dept. 1996), and Gallo v. Montauk Video, 684 N.Y.S.2d 817 (2d Dept. 1998), both cases that Defendants cite for the proposition that attorney's fees are not recoverable as actual damages, neither plaintiff requested reimbursement of the fees as defamation damages caused by defendants' wrongful conduct but rather as ordinary attorney's fees. The Orlowski and Gallo courts' recitation of the American Rule, therefore, did not concern the question of whether or not the fees were recoverable

16

as mitigation damages.[6]

The parties disagree over the proper interpretation of two additional cases, although upon review of each case, Plaintiff's interpretation is more reliable. Plaintiff cites <u>American Fed. of Musicians v. Reno Riverside Hotel, Inc.</u>, 475 P.2d 220 (Sup. Ct. Nevada 1970), a defamation case which held the following:

> The compensatory damage award was the exact amount of counsel fees incurred and paid by the hotel to its counsel for services incident to this litigation . . . . This suit apparently prevented further damage. It is appropriate in some cases to consider attorney's fees as an item of damage. Since the institution of this litigation by the hotel was due to the activity of [the union], and the expenditure for representation of counsel was necessary, the trial court properly treated that expenditure as damage.

475 P.2d at 222. Defendants counter that <u>American Fed. of Musicians</u>, to the extent that it suggests that attorney's fees

---

[6] <u>Camatron Sewing Machines, Inc. v. F.M. Ring Assoc. Inc.</u>, 582 N.Y.S.2d 396 (1s Dept. 1992), and <u>Rosano's Farm Store, Inc. v. Int'l Collection Service, Inc.</u>, 495 N.Y.S.2d 264 (3d Dept. 1985), are also cited to for the proposition that "it is beyond dispute that attorney's fees in a defamation action do not constitute 'actual damages.'" (Def's. Br., 18.) However, neither of these cases involved a defamation claim at all. <u>Camatron</u> concerned a dispute over a lease and <u>Rosano's</u> concerned a breach of contract. Appending these cases as support for the notion that attorney's fees are not recoverable in a defamation action is, charitably, dubious.
    Defendants do cite <u>Seattle Times v. Seattle Mailer's Union No. 32</u>, 664 F.2d 1366 (9th Cir. 1982) for a general statement against including attorney's fees as compensatory damages, but <u>Seattle Times</u> specifically concerned a breach of a collective bargaining agreement under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and is insufficient to overcome the substantial authority holding fees appropriate as mitigation damages in a defamation action.

17

can be recovered as damages, was overruled by <u>Sandy Valley Assoc. v. Sky Ranch Estate Owners Ass'n</u>, 117 Nev. 948, 955 n.7 (2001).

Defendants apparently seize on the language in footnote 7 of the <u>Sandy Valley</u> opinion: "The following cases involved issues relating to attorney fees as an element of damage. Any language in these cases that suggests attorney fees were considered pursuant to a rule, statute or agreement is disapproved." <u>Id.</u> Had Defendants read only four paragraphs further in the <u>Sandy Valley</u> opinion, however, they would have encountered the Court's specific guidance as to inclusion of attorney's fees as damages in cases involving tortious conduct:

> In contrast, when a party claims it has incurred attorney fees as forseeable damages arising from tortious conduct or a breach of contract, such fees are considered special damages. They must be pleaded as special damages in the complaint pursuant to NRCP 9(g) and proved by competent evidence just as any other element of damages . . .. Finally, when attorney fees are considered as an element of damages, they must be the natural and proximate consequence of the injurious conduct.

<u>Id.</u> at 969. This language can only be responsibly read as upholding the <u>American Fed. of Musicians</u> decision, and therefore Defendants' interpretation of the case is entirely meritless.

The parties also clash over the proper interpretation of <u>Wachs v. Winter</u>, 569 F. Supp. 1438 (E.D.N.Y. 1983). Defendants cite <u>Wachs</u> for the proposition that "attorney's fees incurred in and management time spent commencing and prosecuting a defamation action are not considered to be mitigation damages." (Def's. Br.,

18

12.) Defendants further represent that Wachs "den[ied] plaintiff's [request for] attorney's fees incurred in prosecuting his defamation claim." Id. Even a cursory reading of the Wachs opinion reveals the exact opposite to be true.

Emmanuel Wachs was an Israeli lawyer, representing himself pro se. Id. at 1441. He claimed, as compensatory damages, 560 hours attributable to the action, for a total of $84,000. Id. at 1448. The Wachs court drastically reduced this request to $12,000, but nevertheless granted Plaintiff's request for attorney's fees as compensatory damage -- even going so far as to reimburse Mr. Wachs' law clerks "for their assistance in preparing his defense." Id. That Defendants cited the Wachs opinion for the notion that attorney's fees are not recoverable as a mitigation expense is, charitably, perplexing.

In sum, I find that attorney's fees are properly recoverable as mitigation damages, in accordance with the considerable authority outlined above. Defendants' motion on this issue is denied.

IV. Conclusion

Accordingly, Defendants' motion to dismiss Plaintiff's damage claims (Docket No. 100) is denied.

Counsel shall confer and inform the Court by letter no later than August 1, 2005 as to how they wish to proceed.

**SO ORDERED**

July 19, 2005

_Loretta A. Preska_
Loretta A. Preska, U.S.D.J.